FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 25, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TOMMY J.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:17-CV-05098-EFS <br><br> **ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> **CLERK'S OFFICE ACTION REQUIRED** |

Before the Court are the parties' cross motions for summary judgment, ECF Nos. 12 & 13. Plaintiff Tommy J. appeals a denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by (1) improperly rejecting the opinions of his medical providers; (2) rejecting his subjective complaints; (3) finding he did not meet a listing; and (4) failing to meet her step-five burden. ECF No. 12 at 8. The Commissioner of Social Security (Commissioner) asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. ECF No. 13.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment, grants

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* proposed draft of LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

in part and denies in part Defendant's Motion for Summary Judgment, enters judgment for Plaintiff, and remands this matter to the ALJ for additional proceedings.

## I.    Factual and Procedural Summary[2]

Plaintiff was born on November 5, 1971, and is 46 years old. Administrative Record (AR) 145. At the time of the hearing, he lived with his 16-year old son. AR 44. He suffers from curvature of the spine, osteoarthritis, affective disorder, and anxiety disorder as well as a knee injury related to a prior gunshot wound. AR 22, 48. Plaintiff completed one year of college, where he studied auto-body technology. AR 68-69. Plaintiff has a criminal history and was incarcerated from 2000 to 2011 for first degree armed robbery. AR 46, 64. Plaintiff worked briefly at the end of 2011 but has not worked since then. AR 45-47.

Plaintiff filed an application for Supplemental Security Income (SSI) on October 15, 2013, alleging disability beginning on September 6, 2013. AR 145-53. His claim was denied initially and upon reconsideration. A hearing was held on January 13, 2016, before Administrative Law Judge Virginia M. Robinson. AR 20-30. The ALJ issued an unfavorable decision on February 16, 2016. AR 17-19. The Appeals Council denied Plaintiff's request for review, AR 1-6, and he timely appealed to this Court. ECF No. 1.

//

/

---

[2] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

## **II. Disability Determination**

A claimant is considered "disabled" for the purposes of the Social Security Act if two conditions are satisfied. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is currently engaged in a substantial gainful activity. *Id.* § 416.920(a)(4)(i). If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, the disability claim is denied. If he does, the evaluation proceeds to step three.

Step three compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404

Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to step four.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If he can, the disability claim is denied. If he cannot, the claim is granted.

The burden of proof shifts during this analysis. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). At step five, the burden shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

//

/

### III. ALJ Findings

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2013, the application date. AR 22.

At step two, the ALJ concluded that Plaintiff had the following medically determinable severe impairments: curvature of spine, osteoarthritis and allied disorders, affective disorder, and anxiety disorder. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id*. at 22–24.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except for the following limitations: Plaintiff can lift or carry up to 10 pounds occasionally; stand or walk for approximately 2 hours and sit for approximately 6 hours per 8 hour work day with normal breaks; occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; frequently balance, occasionally stoop, kneel, crouch, and crawl; requires a handheld assistive device for prolonged ambulation or ambulating on uneven terrain; avoid concentrate exposure to extreme cold, excessive vibration and workplace hazards such as dangerous machinery, and cannot work at unprotected heights; perform simple, routine tasks in a routine job work environment, with only superficial interaction with coworkers and only incidental interaction with the public. AR 24. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but she found that some of Plaintiff's statements concerning the intensity, persistence and limiting effects were not entirely credible. *Id*. at 25.

In determining Plaintiff's RFC, the ALJ gave little weight to the opinion of Dr. Mark Merrell; partial weight to the opinions of Dr. Hazel Gavino, the DSHS psychological examiner, and therapist Marlena Workman; some weight to the opinion of Jared Holman, ARNP; and significant weight to the opinions of State agency physician Dr. Normal Staley and State agency psychologist Dr. Diane Fligstein. AR 28-29.

At step five, the ALJ found Plaintiff had no past relevant work and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 29-30.

### IV. Standard of Review

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

It is the role of the ALJ, not this Court, to weigh conflicting evidence and make credibility assessments. If the evidence in the record "is susceptible to more than one rational interpretation, [the court]

must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## V. Discussion

**A. Although the ALJ correctly weighed Dr. Merrell's medical opinion, she improperly rejected Dr. Gavino's medical opinion.**

Plaintiff argues that the ALJ failed to adequately consider the opinions of treating physicians Dr. Hazel Gavino and Mark Merrell. ECF No. 12 at 10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d 821, 830–31).

1. <u>Dr. Gavino</u>

On January 15, 2016, in response to two work-related questions in a written evaluation, treating physician Dr. Hazel Gavino opined that Plaintiff had the following limitations: "no prolonged standing, sitting, bending, kneeling, crawling, lifting heavy weights, unable to use transportation effectively on time" and that he would miss four or more days of work per month because of his chronic left knee and back pain. AR 372-73. Dr. Gavino also opined that Plaintiff's pain requires him to lie down three to four hours a day. AR 372.

The ALJ gave Dr. Gavino's opinion partial weight. AR 28. She agreed that Plaintiff "does have some reasonable limits on prolonged standing, lifting heavy weights, twisting, kneeling and such," but she also noted

that "he is able to drive, perform regular activities of daily living, and was performing work as [a] custodian." *Id*. Thus, she concluded "it is more reasonable that he could work at a less than the full range of sedentary work." *Id*.

Plaintiff argues that the ALJ may not rely on his daily activities to reject Dr. Gavino's opinion and that even his part-time custodial work made him feel "depressed and exhausted" and exacerbated his knee pain. ECF No. 12 at 11. The Commissioner responds that Dr. Gavino's opinion does not constitute "significant probative evidence" that must be discussed by the ALJ because her opinion that Plaintiff could not sustain "prolonged" standing or sitting does "specify an actual quantitative work related limitations" for the ALJ to assess. ECF No. 13 at 15. The Commissioner further argues that even so, the record demonstrates that Plaintiff had the ability to work at a less than full range of sedentary work, and the ALJ properly discredited Dr. Gavino's opinion. *Id*.

The ALJ did not list sufficiently clear and convincing reasons to discredit Dr. Gavino's opinion. A naked reference to Plaintiff's daily living activities, without specifically naming an activity and why it contradicted Dr. Gavino's conclusions, is not an appropriate reason to reject a treating physician's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1041 (explaining that ALJs frequently and improperly rely on daily living activities to reject medical opinions). Similarly, the ALJ's mention of Plaintiff's part-time custodial work does not constitute a clear and convincing reason to reject Dr. Gavino's opinion. The ALJ did not explain how part-time work at an unknown exertional level for an

unknown number of hours contradicted Dr. Gavino's specific conclusions that Plaintiff has to lie down three to four hours a day and would miss four or more days of work per month because of his chronic knee and back pain. AR 372-73. Nor did she identify any medical opinions or any other record evidence that contradicts Dr. Gavino's opinion.

Because the ALJ's reasons for rejecting Dr. Gavino's opinion are not clear and convincing, she erred by giving the opinion partial weight.

### 2. Dr. Merrell

On January 4, 2016, treating physician Dr. Mark Merrell opined that Plaintiff "continues to be significantly disabled" and that further surgery was required to stabilize his patella. AR 374. The ALJ gave this opinion "little weight" because Dr. Merrell failed "to offer adequate explanation and objective evidence as to the claimant's particular functional limitations" and because "a determination of disability is reserved for the Commissioner." AR 28.

Plaintiff argues that the ALJ incorrectly characterized Dr. Merrell's opinion as unexplained and that she ignored his statement that Plaintiff "is significantly limited because he has to elevate his leg 2-3 hours a day because of intermittent swelling." ECF No. 12 at 11-12. However, Dr. Merrell made this statement more than 14 months prior, at an appointment on October 13, 2014. AR 257. Thus, it has little bearing on his opinion given January 4, 2016. Dr. Merrell's opinion that Plaintiff was "significantly disabled" remains "brief, conclusory, and inadequately supported by clinical findings"; thus, it was properly rejected by the ALJ. *Bray*, 554 F.3d at 1228.

**B.    The ALJ did not error in weighing other source testimony.**

Plaintiff also argues that the ALJ failed to adequately consider the opinion of treating therapist Marlena Workman. ECF No. 12 at 10.

An ALJ may consider "other source" testimony from sources such as nurse practitioners, physicians' assistants, and counselors. 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 13 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, the ALJ must provide "reasons that are germane to each witness" and may not simply categorically discredit the testimony. *Id.* at 919.

1.    Therapist Workman

On October 9, 2014, therapist Marlena Workman filled out a checkbox assessment of Plaintiff. AR 249-52. In doing so, she indicated Plaintiff exhibited moderate and marked mental limitations and that he would miss four or more work days per month. *Id*. The ALJ gave this opinion partial weight for two reasons: (1) Therapist Workman is not an acceptable medical provider; and her opinion on Plaintiff's limited social function is unsupported by the record, which shows he had "no difficulties interacting with his providers, functioning outside his home, seeking and accepting work, and working with the division of vocational rehabilitation." AR 28.

As a preliminary matter, an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111. Such an opinion – unexplained,

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

as it is here – is, by its very nature, brief and conclusory. Thus, the ALJ properly rejected it. *See Bray*, 554 F.3d at 1228. Moreover, Plaintiff's complaints with the ALJ's second reason for rejecting Therapist Workman's opinion are more akin to an interpretive disagreement than an allegation of error. Accordingly, the ALJ did not err by rejecting Therapist Workman's opinion.

**C. The ALJ did not err by rejecting Plaintiff's subjective symptom complaints.**

Plaintiff also argues the ALJ erred by improperly rejecting his subjective symptom complaints. ECF No. 12 at 14–18.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester*, 81 F.3d at 834.

Courts may not second-guess ALJ findings that are supported by substantial evidence. *Id.*

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Plaintiff alleged disability due to his impairments. He contended that his symptoms affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and get along with others. AR 24. At the hearing, Plaintiff testified that he cannot stand for five to ten minutes due to pain and that he can only walk a block before his knee gets painful. He testified to difficulty walking on uneven terrain and that his knee sometimes gives out. He further testified to using a cane and needing to elevate his leg two to three hours a day. He also alleged that he suffered from neck and back pain as well as PTSD with nightmare, flashbacks, and insomnia. AR 27.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of the symptoms was not entirely credible. AR 25. The ALJ provided a number of reasons for discounting Plaintiff's symptom testimony, including the following: (1) the record indicates his spine pain was adequately controlled during the relevant period; (2) medical records

conflict with his testimony regarding knee pain and functionality; (3) he was engaging in part-time custodial work during the relevant period and repeatedly reported in therapy that he was seeking work; and (4) his urine drug screens were not positive for opiates, which he was prescribed, but were positive for marijuana, which he denied using. AR 27–28.

First, the ALJ found that Plaintiff's complaints regarding his spine pain were inconsistent with the medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (explaining that medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects). Indeed, despite Plaintiff's complaints of disabling spine pain, the record indicates he was not taking his prescribed opiate pain medication, AR 233–34, nor is there evidence that he followed up on his provider's recommendation that he seek chiropractic or injection therapy. AR 241–243. When Plaintiff did take his prescribed pain medication, however, that treatment was effective. *See Molina*, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment") (internal quotations omitted).

The ALJ noted that Plaintiff's treatment records regarding his knee pain are similarly inconsistent with his testimony. This conclusion was supported by substantial evidence in the record. The ALJ correctly noted that after Plaintiff's knee replacement, he reported significant improvement. An exam by Eric Lowe, PA-C on May 21, 2015, revealed only "mild swelling and a bit of discomfort in his knee." AR 259. Contrary

to his testimony that he could only walk a block at a time, AR 51-52, he had a tandem gait, smooth coordinated movements to the extremities, showed no weakness, and had full extension and flexion to greater than 130 degrees with no joint instability or tenderness to the patellar or quadriceps tendons. AR 259.

Third, The ALJ discredited Plaintiff's subjective symptom complaints by noting that he engaged in part-time custodial work during the period of alleged disability. AR 27. This conclusion was supported by substantial evidence. Not only was Plaintiff successfully completing part-time work in September 2015, he complained to Therapist Workman that was having difficulty finding full-time work because of "the stipulations for my SSI." AR 318. He further expressed interest in "going back to school at CBC and possibly finding a job on campus" and reported that he was "planning and organizing his own small business" AR 313, 318. The ALJ correctly pointed out that these statements suggest a secondary gain motivation and discredited his testimony. AR 27-28.

Finally, the ALJ noted that Plaintiff's drug screens were not positive for opiates, indicating a lack of compliance with treatment plans. AR 28. Notably, although Plaintiff stated to his medical providers that he did not use marijuana, AR 352, 356, multiple urine drug tests came back positive for marijuana metabolites. *See* AR 229-230, 233-34. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 50 F.3d 1428, 1434 (9th Cir. 1995).

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 15

Accordingly, the ALJ did not err by rejecting Plaintiff's subjective symptom testimony.

**D.    The ALJ did not err by finding Plaintiff did not meet a listing.**

Plaintiff argues the ALJ erred by finding Plaintiff did not meet Listing 1.02 – Major Dysfunction of a Joint. ECF No. 12 at 18-19.

At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4. The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *See* 20 C.F.R. § 404.1520(d).

Plaintiff claims that he meets or equals Listed Impairment 1.02, which is "major dysfunction of a joint." To meet or equal this impairment, Plaintiff was required to demonstrate he had an "inability to ambulate effectively," which is defined as "having insufficient lower extremity function" to "permit independent ambulation without the use of a hand-held assistive device(s) *that limits the functioning of both upper extremities*." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added). Although Plaintiff testified that he relies on a cane, which is a hand-held device that limits the functioning of one upper extremity, there is no evidence in the record that he ever utilized or required the use of a walker or other hand-held assistive device that limited the functioning of both upper extremities. Accordingly, the ALJ's

finding that Plaintiff did not meet listing 1.02 was supported by substantial evidence. AR 22.

**E.     The Court declines to rule on the step-five issue.**

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 416.920(g). At an administrative hearing, an ALJ may solicit vocational expert (VE) testimony as to the availability of jobs in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). A VE's testimony may constitute substantial evidence of the number of jobs that exist in the national economy. *Bayliss*, 427 F.3d at 1218. The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence. *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013).

Here, the VE testified that Plaintiff could perform the following occupations: escort vehicle driver (DOT #919.663-022), sedentary, SVP-2, with 200,000 jobs nationally and 3,000 in Washington; document preparer (DOT #249.587-018), sedentary, SVP-2, with 100,000 jobs nationally and 2,000 in Washington; and assembler (DOT #734.687-018), sedentary, SVP-2, with 250,000 jobs nationally and 5,000 in Washington.

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by Plaintiff's medical providers. Because the Court reverses and remands for the ALJ to reconsider Dr. Gavino's opinion, the Court declines to address this issue. Should

the ALJ deem it appropriate to consult a VE on remand, she should do so.

### VI. Conclusion

The Court is troubled by Plaintiff's statement that he was not working full-time because of "the stipulations for [his] SSI" and agrees that it suggests a secondary gain motivation. AR 27–28, 318. However, the ALJ's rejection of Dr. Gavino's opinion was legally insufficient. Thus, for the reasons discussed above, the Court reverses the ALJ's decision and remands for the ALJ to reconsider Dr. Gavino's opinion and conduct any additional proceedings, including further development of the record, as she sees fit.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED IN PART AND DENIED IN PART**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED IN PART AND DENIED IN PART**.
3. The Clerk's Office shall enter **JUDGMENT** for Plaintiff.
4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, enter Judgment for Plaintiff, provide copies to all counsel, and close the file.

**DATED** this  23rd  day of July 2018.

>             s/Edward F. Shea
>              EDWARD F. SHEA
>     Senior United States District Judge